
**ORIGINAL**

LEONARDO M. RAPADAS
United States Attorney
JEFFREY J. STRAND
First Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortes
Hagåtña, Guam 96910
Telephone: (671) 472-7332/7283
Telecopier: (671) 472-7334/7215

Attorneys for United States of America

**FILED**
**DISTRICT COURT OF GUAM**

DEC 10 2007

**JEANNE G. QUINATA**
**Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF GUAM

| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 07-00078 |
|---|---|---|

UNITED STATES OF AMERICA,     )     CRIMINAL CASE NO. 07-00078
                              )
            Plaintiff,        )
                              )
                              )     **GOVERNMENT'S MOTION FOR**
    vs.                       )     **RECONSIDERATION OF**
                              )     **DISTRICT COURT'S ORDER OF**
                              )     **DECEMBER 7, 2007 STRIKING**
                              )     **SURPLUSAGE IN SUPERSEDING**
                              )     **INDICTMENT; AND SUPPORTING**
                              )     **MEMORANDUM**
                              )
JUAN C. TENORIO and           )
CHARLENE F. TENORIO,          )
                              )
            Defendants.       )
_____)

## I. THE COURT'S ORDER IS CONTRARY TO THE RULES OF FEDERAL CRIMINAL PROCEDURE

Defendants deliberately waited until the jury was empaneled before filing a motion to strike as "surplusage," pursuant to Federal Rule of Criminal Procedure (FRCrP) 7(d), language in the indictment referring specifically to monies owed by the Tinian Dynasty Casino to Juan Tenorio & Associates, Inc. At the same time, defendants moved to prohibit the government from introducing evidence related to that particular asset, which is one of three which defendants are

1  alleged to have concealed, in violation of 18 U.S.C. § 152(1). The court granted the motions,

2  and suppressed that portion of the government's proof.

3      Any motions alleging a defect in the indictment <u>must</u> be raised while the case is pending,

4  unless the motion claims a defect in the court's jurisdiction or a failure to state an offense.

5  FRCrP 12(b)(3)(B). Defendants' motion to strike was a motion to correct a defect in the

6  indictment. See, generally, 41 Am.Jur.2d Indictment and Informations § 100. Their motion to

7  exclude the referenced evidence was a motion to suppress. It does not matter how a motion is

8  labeled: what matters is its intended effect. The FRCrP Advisory Committee Notes to the 2002

9  amendments state "[t]he new provision also more clearly delineates those motions that *must* be

10  filed pretrial and those that *may* be filed pretrial." The Committee also noted that Rule 47

11  governs any pretrial motions filed under Rule 12, including form and content. Rule 47(c)

12  requires that party <u>must</u> serve a written Rule 12 motion, and any hearing notice, "at least 5 days

13  before the hearing date," which in this case was the trial date itself.

14      Defendants, however, failed to file this motion by the court's deadline, which had been

15  set pursuant to FRCr 12(c). The defendant's failure to file within the deadline constitutes a

16  waiver of his right to file such a motion, unless defendant can show good cause why he did not

17  do so by the deadline, FRCrP 12(e). The deadline for filing motions in this case was September

18  25, 2007. In <u>United States v. Miller</u>, 984 F.2d 1028 (9th Cir. 1993), for example, the defendant

19  moved to suppress wiretap evidence in the middle of his third trial; the issue had already been

20  thoroughly litigated in former proceedings. The district court ruled the motion was untimely and

21  the Ninth Circuit affirmed. It noted that 12(b)(3) required such motions to be made prior to trial,

22  and defendant had accordingly waived his right to file it later. He failed to show good cause to

23  justify an exception under Rule 12(e) (at that time, Rule 12(f)).

24      The defendants failed to give a good reason for not filing their motion to strike prior to

25  trial. It can hardly be said that they did not know the nature of the charge, or the evidence which

26  the government intended to use. An example of the sort of "cause" the court will consider is

27

28                                      −2−

United States v. Henley, 984 F.2d 1040 (9th Cir. 1993), where the defendant was on trial for bank robbery, and the government's chief evidence against him was incriminating items found in his car. After the trial commenced, the defendant moved to suppress his statement made to arresting officers that the car belonged to him. He excused his failure to make the motion sooner because he was not aware that the government intended to use that particular statement. He assured the court that had he been aware of this, he would have filed a pretrial motion to suppress. Id. at 1045, FN4. The dissent derided this excuse, but the majority held that the district court had not abused its discretion in accepting counsel's statement as true, and thus as adequate cause to satisfy Rule 12(e).

Rule 12 is expressly structured to preserve either party's right to appeal. For example, FRCrP 12(d) allows the court to defer ruling on a pretrial motion but only if the deferral will not adversely affect a party's right to appeal. If the matter affects the admissibility of the government's evidence, it must be ruled upon before jeopardy attaches.

United States v. Ramirez, 324 F.3d 1225 (11th Cir. 2003) is directly on point. The defendants were on trial for witness tampering, as part of a larger investigation into the murders of individuals cooperating against a drug cartel. Immediately after opening statements, the defendants made a Rule 29 motion on the basis that the indictment failed to charge that the murders were done with "malice aforethought" and "premeditation," and without these elements of first degree murder, the indictment was time-barred because it had not been brought within five years. The district court denied the motion as untimely and the Eleventh Circuit affirmed, holding that defendants had waived this objection by not filing it prior to trial. It noted first that it was irrelevant that the defendants called their motion a "Rule 29 motion" rather than an objection to the indictment under Rule 12. They were asserting objections based upon defects in the indictment, which were waived by failing to object or move to strike prior to trial. The court agreed that Rule 12 allowed the court to consider the waiver issue if there was a showing of good

-3-

cause, but "there is no good cause in this case." Id. at 1228. The district court had put the matter succinctly:

> "[R]ather than file a motion prior to trial, defendants decided to submit this motion and a lengthy memorandum immediately upon the conclusion of opening statements.
>
> Defendants were clearly prepared to file their motion earlier, but decided to withhold it in order to seek a strategic advantage by waiting until jeopardy attached upon the swearing in of the jury." Id., FN8.

The court cited United States v. Suescun, 237 F.3d 1284 (11th Cir.2001), which held that because the defendants had all the information necessary to challenge the indictment prior to the date set by the court for pretrial motions, and did not, they were unable to show good cause that the failure to file was not a waiver.

The Ramirez court went on to say:

> "Nothing in this case warranted waiting until after opening statements to raise this defense; the defendants merely waited to gain a strategic advantage by raising the defense after jeopardy attached. This tactic is precisely what Rule 12 was designed to prevent." Id.

The court adopted the reasoning of United States v. Oldfield, 859 F.2d 392, 297 (6th Cir. 1988), that Rule 12 was instituted to prevent just this sort of "sandbagging." Rule 12 was designed to eliminate such tactics except for failure to show jurisdiction or to charge an offense.

The transcript of the December 6, 2007, hearing, which occurred during and after selection of the jury, is attached hereto as Exhibit 1. At 1:44 p.m., during jury selection, Mr. Trapp indicated he intended to file a motion, "probably after the jury is sworn in." (P.4.) The court inquired as to the nature of the motion, so that the government would have time to counter it. He refused to say what it concerned, stating "[i]t would be malpractice for me to do it at this time. It's my work product, and I'm not prepared to advise the government, Your Honor." (P. 5). At 4:00 p.m., after the jury had been selected, sworn and excused, counsel asked for a five-minute recess and file his motions. (P. 7).

Clearly, there was no good cause for waiting until after the jury had been empaneled, because the motions were already researched, typed, and ready to file, and clearly could have

−4−

been filed five minutes prior to the jury being sworn. This is an attempt to deny the government its statutory right to appeal, as provided by 18 U.S.C. § 3731. The rules do not allow this procedure. Defendants have not cited any authority which would allow them to attack the indictment after the jury has been empaneled, without showing good cause for their failure to do so sooner. They would be hard pressed indeed to establish such cause in these circumstances.

## II. THE GOVERNMENT HAS BEEN DENIED ITS APPELLATE RIGHTS

### A. Paragraph One of Title 18, U.S.C. §3731

Title 18, U.S.C. § 3731 allows the government to appeal from decisions of the trial court dismissing the indictment, or counts therein, and from decisions excluding evidence that are so sweeping and detrimental to the government's case that they qualify as a dismissal. The court's decision to strike the evidence related to J.C. Tenorio & Associates has removed approximately 80% of the government's case. To qualify under this paragraph, the government would have to demonstrate that the court's suppression of this evidence constitutes a dismissal of the indictment.

The government's evidence will show that the Tinian Dynasty (Dynasty) owed Tenorio & Associates, Inc. (Guam) ("the Corporation") money for work which had been provided some years before the Corporation filed a Chapter 11 bankruptcy petition in 1999. By then, Dynasty had experienced financial problems and had stopped making payments on its debt. Dynasty's finances improved in 2000, and it started sending monthly checks of $5,000 to Guam, made payable directly to Juan C. Tenorio. Bank of Guam has been unable to provide any records of the corporate bank account, so it is unclear whether the monies paid on this account receivable during 2000 were being deposited into the corporation account or being diverted elsewhere. What is clear is that Juan C. Tenorio directed his general manager to sign the Corporation's petition, and he later affirmed before the bankruptcy trustee Bob Steffy that it was true. The Corporation petition did not report the Dynasty accounts receivable. The corporate bankruptcy

–5–

ended in a Chapter 7 proceeding, and the trustee reported there were no corporate assets to distribute. Juan Tenorio opened a personal savings account at the Bank of Guam in January, 2001. In February, 2001, he directed Dynasty to deposit the $5,000 monthly payments into his savings account. On March 8, 2002, he opened a new account at the Bank of Guam under the name of his mother, Rita Tenorio, naming himself as custodian of the account. (Rita was almost 100 years old at the time.) He then directed Dynasty to make the $5,000/month payments into this new account. On March 20, 2002, he filed the personal bankruptcy petition which is the subject of this indictment. These actions are unquestionably deliberate, fraudulent conduct, which the jury would easily recognize.

The second asset alleged is the cash value of the Tenorios' personal life insurance policies, which were also not reported. The proof of the failure to disclose the second asset is their knowledge of the cash surrender value of these policies and the reporting of this value in a financial statement filed by Juan Tenorio to the Bank of Guam.

The third asset is Rota real property which Juan Tenorio purchased in 1996, for which he was still making payments during pendency of the personal bankruptcy proceeding.

In short, by excluding the evidence of the Dynasty income, the court has excluded the best part of the government's proof of fraudulent intent. It is doubtful, however, that an appellate court would hold that the government is unable to go forward, or that this exclusion constitutes a dismissal. Thus, ¶ 1 of § 3731 is not available to the government.

**B. Paragraph Two, 18 U.S.C. § 3731**

This leaves an appeal under ¶ 2, which allows the government to appeal a suppression of its evidence, but only if that suppression has been made before the defendant was put in jeopardy. Here, the court's ruling was made after jeopardy attached. Thus, if the court's ruling is allowed to stand, the government will have lost its right to appeal the court's ruling because the court has entertained this motion without regard for Rule 12.

-6-

## C. Mandamus, 28 U.S.C. 1651

The government's only remedy is to petition the Ninth Circuit for a writ of mandamus, as provided by 28 U.S.C. §1651, to order the court to deny defendants' motions because they were filed in violation of Rule 12. For the appellate court to grant mandamus, the court considers five principal factors: 1) the party seeking the relief has no other adequate means; 2) the petitioner will be damaged or prejudiced in a way which is not correctable on appeal; 3) the court's order is clearly erroneous as a matter of law; 4) the court's order is an oft-repeated error or manifests a persistent disregard of the federal rules; and 5) the court's order raises new and important problems. Valenzuela-Gonzales v. United States, 915 F.2d 1277, 1279 (9th Cir. 1990); United States v. Amlani, 169 F3d. 1189 (9th Cir. 1999). Even if the applicable legal prerequisites are met, the appellate court exercises discretion whether to issue a writ of mandamus. The remedy of appellate mandamus is drastic, only invoked in extraordinary circumstances.

In summary, the court's accepting the defendants' motions has raised three critical considerations  First, it would be unfair to the government to allow this motion. The court has suppressed a substantial part of the government's case and it has no recourse of appeal. Second, the court would be disregarding the rules of criminal procedure which it is bound by law to follow. And third, if allowed to continue, such maneuvers cannot but undermine the court's authority. If the court's deadlines can be so blithely disregarded in this case, its future orders may be treated with equal disrespect.

III.  THE DISTRICT COURT ERRED IN STRIKING AS SURPLUSAGE THE TINIAN DYNASTY ACCOUNTS RECEIVABLE ASSET FROM THE SUPERSEDING INDICTMENT

## A. Bankruptcy Law in General

Bankruptcy courts will not recognize the distinction of corporate form in order to perpetuate a fraud. Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 218-19, 61 S.Ct. 904, 85 L.Ed.1293 (1941) (where debtor's transfer to insider corporation was fraudulent, corporation could not remain insulated and independent). The statutory language of Section

–7–

541(a) reflects Congress' intent to define property of the estate in the broadest possible sense. Hines, 147 F.3d 1185, 1189 (9th Cir. 1998), citing U.S. v. Whiting Pools, Inc., 462 U.S. 198, 204-05 (1983). Thus, the Bankruptcy Code imposes a duty upon a debtor to disclose all assets, pending or potential, contingent and unliquidated, which a debtor might have. See Hamilton v. State Farm Fire, 270 F.3d 778, 785 (9th Cir. 2001); Eastman v. Unition Pacific R. Co., 493 F.3d 1151 (10th Cir. 2007). Debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate. In re Murray, 249 B.R. 223, 231 (E.D. N.Y. 2000). It is not for the defendant to decide which of his assets had to be disclosed.

**B. Pleading Indictments**

Fed.R.Crim.P. 7(c)(1) requires that the indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is facially valid and sufficient if it contains the elements of the offense charged, fairly informs the defendants of the charges against which they must defend, and enables the defendants to plead double jeopardy in bar of further prosecution. Hamling v. United States, 418 U.S. 87, 117 (1974).

It is well established that an indictment that sets forth the offense in the language of the statute itself is generally sufficient. United States v. Ely, 142 F.3d 1113, 1120 (9th Cir. 1997). "In reviewing the sufficiency of the indictment, a court should consider the challenged count as a whole and should refrain from reading it in a hypertechnical manner. The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." Id. (quoting United States v. Allender, 62 F.3d 909, 914 (7th Cir. 1995)).

And, it is equally clear that an indictment is "not required to allege [the] theory of the case or list all supporting evidence to prove the crime alleged." United States v. Mustachio, 968

−8−

F.2d 782, 787 (9th Cir. 1991). Accord, United States v. Blinder, 10 F.3d 1468, 1476 (9th Cir. 1993) (An indictment "need not explain all factual evidence to be proved at trial").

## C. Pleading a Bankruptcy Indictment

The bankruptcy fraud statute, 18 U.S.C. § 152(1), the defendants are charged with provides that:

> A person who-
>
> (1) knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States trustee, any property belonging to the estate of a debtor;
> ...
> shall be fined under this title, imprisoned not more than five years, or both.
> 18 U.S.C. § 152(1).

The Seventh Circuit has expressly approved a bankruptcy indictment which did not list any assets at all. In the bankruptcy fraud case of  United States v. Webster, 125 F.3d 1024, (7th Cir. 1997), the Seventh Circuit upheld an indictment which alleged:

On or about March 25, 1991, in the Western District of Wisconsin,

the defendant,... knowingly and fraudulently concealed from a trustee charged

with the control and custody of property in connection with a case under Title

11 of the United States Code, property belonging to an estate of a debtor in

bankruptcy. (All in violation of Title 18, United States code, Sections 152(1) and 2(a)).

The court held that the indictment was sufficient despite the lack of factual detail regarding the property allegedly concealed. Id. at 1028-1031.

The single case cited by the defendants Fowler v. Shadel, 400 F.3d 1016 (7th Cir. 2005), is easily distinguishable. Fowler was a civil case concerning a debtor's attempt to claim vehicles owned by his corporation as his own exempt property. The Court held that the debtor could not claim corporate property as his own since he had already obtained a benefit from the corporate structure and could not now ignore that structure to suit his needs. At the time of the bankruptcy filing, Fowler's corporation still existed and still owned the vehicles. In contrast, the Tenorios'

-9-

corporation had long since terminated business and was in Chapter 7 liquidation at the time of the Tenorios' 2002 personal filing. Unlike <u>Fowler</u>, the Tenorios cannot claim that the Dynasty receivables still belonged to their Corporation because the Corporation was in Chapter 7 and itself had denied ownership of the asset. The Seventh Circuit ruled that the debtor could not have it both ways: he could not choose the protections of the corporate form and then ignore that form when convenient. The same principle should apply to the present case. The Tenorios should not be able to deny ownership of the Dynasty payments in their corporate case to their advantage and then paradoxically claim corporate ownership in their personal bankruptcy case.

In the instant case, the superseding indictment against the defendants pled more than the law required. It not only tracked the statutory language but also identified three properties - Tinian Dynasty accounts receivable, interests in life insurance policies, and interest in Rota property - that they allegedly concealed. The only purpose of specifically pleading these properties was to enable the defendants to plead double jeopardy in bar of possible further prosecution concerning the same assets.

A motion to strike surplusage does not affect the admissibility of the government's evidence. The purpose of Rule 7(d) is to protect the defendant against prejudicial allegations that are neither relevant nor material to the charges made in the indictment. See 41 Am.Jur. 2d Indictments and Informations § 100. The references to all three assets could be removed from the indictment, but that would not affect the admissibility of the government's evidence. Any testimony concerning any of these assets would be admissible, regardless whether they were specifically pled in the indictment, because the criteria for relevancy under FRE 402 is whether the evidence has a tendency to make the existence of any fact *that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence. In short, one measures relevancy against *whether it tends to prove elements of the charge*.

-10-

Moreover, the defendants were provided discovery in this case. They could have but did not seek more information through a bill of particulars concerning further identification of the property at issue. Tested against the foregoing standards, the description of the Tinian Dynasty accounts receivable asset in the superseding indictment should not have been stricken as surplusage,

RESPECTFULLY SUBMITTED this _10th_ day of December 2007.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and the CNMI
KARON V. JOHNSON
Assistant U.S. Attorney

By: _____

MARIVIC P. DAVID
Assistant U.S. Attorney

-11-

IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

\* \* \*

**FILED**

**DISTRICT COURT OF GUAM**

DEC 1 0 2007

**JEANNE G. QUINATA**
**Clerk of Court**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) COURT OF APPEALS |
| | )   CASE NO. 07- |
|         Plaintiff, | ) |
| | ) |
|    vs. | )CRIMINAL CASE |
| | )    NO. CR07-00078 |
| JUAN C. TENORIO, | ) |
| CHARLENE F. TENORIO, | ) |
| | ) |
|         Defendants. | ) |
| _____ | ) |

TRANSCRIPT OF PROCEEDINGS

BEFORE

THE HONORABLE FRANCES TYDINGCO-GATEWOOD

Chief District Judge

**MOTION TO STRIKE & OBJECTION TO EVIDENCE**

**THURSDAY, DECEMBER 6, 2007**

GOVERNMENT
EXHIBIT

____/____

Wanda M. Miles, Official Court Reporter
District Court of Guam

```
 1    APPEARANCES:

 2


 3    FOR THE PLAINTIFF:

 4    UNITED STATES ATTORNEY'S OFFICE
      BY:  MARIVIC DAVID, Esq.
 5    ASSISTANT U.S. ATTORNEY
      Suite 500, Sirena Plaza
 6    108 Hernan Cortez Avenue
      Hagatna, Guam  96910
 7


 8    FOR DEFENDANTS:

 9    HOWARD TRAPP INCORPORATED
      Attorneys At Law
10    BY:  HOWARD G. TRAPP, ESQ.
      139 Chalan Santo Papa, #200
11    Hagatna, Guam  96910

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            HAGATNA, GUAM; THURSDAY, DECEMBER 6, 2007

 2              (Proceedings resumed at 1:44 p.m.)

 3                          *  *  *

 4            THE COURT:  We're back on the record in the

 5    case of USA versus Mr. and Mrs. Tenorio.  And Mr. and

 6    Mrs. Tenorio are present, and all counsels are present.

 7            So, Mr. Trapp, I guess the question I have is,

 8    and Ms. David, do you have -- are you going to have --

 9    do you anticipate having any motions to be made before

10    or after the jury is sworn in?  Ms. David?

11            MS. DAVID:  Not at this time, Your Honor.

12            THE COURT:  Mr. Trapp?

13            MR. TRAPP:  Probably after the jury is sworn

14    in, Your Honor.

15            THE COURT:  Okay, so in light of that,

16    Mr. Trapp, I guess my concern is, I don't want to keep

17    the jurors waiting then, if --

18            MR. TRAPP:   -- suggestion that they might be

19    sworn --

20            COURT REPORTER:  I can't hear you.

21            MR. TRAPP:  I'm sorry.  That's why I made the

22    suggestion that they may be sworn today.

23            THE COURT:  Yeah.  I'm going to do that then,

24    we'll get the two alternates and I'll swear them in

25    today.
```

1     MR. TRAPP:  (Overlapping)  -- do that, Your

2 Honor, because --

3     THE COURT:  Well, yeah, I'm just trying to

4 figure out the time frame here.  I don't want to call

5 in the jurors, have them ready to go, then you make

6 your motion.

7     MR. TRAPP:  I don't want to either, Your

8 Honor.  And frankly, I probably spoke more than I

9 should speak, but I'm trying to, as I say, be a team

10 player.

11     THE COURT:  No, I'd rather know ahead of time

12 so that -- because what if Ms. David wants time to

13 research the issue.

14     MR. TRAPP:  She might very well, Your Honor.

15     MS. DAVID:  And I would be very pleased to

16 have time to research whatever issue Howard, Mr. Trapp

17 should have --

18     THE COURT:  All right.  You don't want to tell

19 us what the issue is?

20     MR. TRAPP:  It would be malpractice for me to

21 do it at this time.  It's my work product, and I'm not

22 prepared to advise the government, Your Honor.

23     THE COURT:  Yes, Ms. David, you want to say

24 something?

25     MS. DAVID:  I'm anticipating something will be

1  filed shortly, at which point I would like time to

2  respond.  However, we do have -- there is a 9:00

3  o'clock proceeding for tomorrow that the court --

4  that's still on schedule.

5          THE COURT:  Well, right now it's on schedule,

6  but if you're going to need time, you're going to

7  research --

8          Are you going to file something tonight, I

9  mean right after the jury is sworn in today?

10         MR. TRAPP:  I may very well, Your Honor.

11         THE COURT:  Okay.  I would prefer that.

12         MR. TRAPP:  Thank you, Your Honor.

13         THE COURT:  That's fine.  I understand that.

14  I'm just trying to figure out then what time I tell the

15  jurors to come in tomorrow.

16         MR. TRAPP:  I would suggest that they be sworn

17  and then perhaps go to the jury room, and then make the

18  decision after that, we can all --

19         THE COURT:  That might be a good idea.

20         MR. TRAPP:  (Overlapping) -- in a more open

21  fashion.

22         THE COURT:  Right.  I guess it would depend on

23  what the issue is, so I can get a better idea how much

24  time we're talking about, and, Ms. David, you can get a

25  better idea of how much time you're talking about in

1   terms of the necessity for research time.

2          MS. DAVID:  Thank you, Your Honor.

3          MR. TRAPP:  Of course it's almost a

4   presumption for me to say this, but of course we have

5   no objections to her having all the time she needs.

6          THE COURT:  Okay.  Well, I'm sure they want to

7   move on the case, but we'll work on that, we'll see

8   what happens.

9                (Whereupon jury selection resumed.)

10                       *  *  *

11                (proceedings at 4:00 p.m. after the jury

12                 was sworn and excused.)

13         THE COURT:  Yes, Mr. Trapp.

14         MR. TRAPP:  May we have perhaps about a five-

15  minute recess?  I have three documents to file.  I'll

16  serve a copy on the government, and then when you take

17  the bench again we could make our argument.

18         THE COURT:  All right, I'll give you ten

19  minutes then.

20                (Recess was taken.)

21         THE COURT:  We're back on the record in United

22  States of America versus Juan and Charlene Tenorio.

23  We're outside the presence of the jury.

24         And Mr. Trapp has filed two motions, one

25  motion to strike matter as surplusage, and an objection

Wanda M. Miles, Official Court Reporter
District Court of Guam

1    -- actually one motion and one objection to admission

2    of evidence, and memorandum in support of the motion

3    and the objection.  The court has received a copy of

4    this.

5             Ms. David, you also have received a copy?

6             MS. DAVID:  Yes, Your Honor.

7             THE COURT:  All right.  And you want to

8    obviously, I assume, want to review this, and argue

9    this tomorrow morning?  Or did you wish to go ahead and

10   agree to what the motion indicates?

11            MS. DAVID:  Well, the government is prepared

12   to argue it.  But if the court wants some briefing,

13   that's fine as well.  I would simply say that this

14   is --

15            THE COURT:  Well, why don't we do this.

16   You're going to argue for -- I mean, you're going to

17   agree with the defense or are you going to go against

18   the defense?

19            MS. DAVID:  We're opposing it.

20            THE COURT:  You're opposing it.  All right.

21            Very well.  So I'm just trying to figure out

22   -- well, the only thing is, I want to look up the one

23   case that's cited here.  But I'm just going to go ahead

24   and call --

25            Are the jurors back yet?  They're still taking

Wanda M. Miles, Official Court Reporter
District Court of Guam

1  their break?  Then once they're ready, let me know.

2        Go ahead and proceed then.  Mr. Trapp, I'll

3  let you proceed then.  You're ready to argue then?

4        MS. DAVID:  Yes, Your Honor.

5        THE COURT:  Okay.

6        MS. DAVID:  Unless the court wants briefing

7  from the government.

8        MR. TRAPP:  I should tell the government, you

9  know, there's cases on this general area that aren't in

10  my brief, and they may very well wish to look into

11  this.

12        THE COURT:  I'm sorry?

13        MR. TRAPP:  They may very well wish to look

14  into this a bit.  The motion itself, if granted, does

15  not mean that the jury trial is not going ahead.

16  There's three different assets, you might say, alleged

17  in the indictment, we're just addressing one of them.

18        The reason that we have done it this way at

19  this time is because I had the Layton Borja case and

20  I had the Ling case, and both of those we get these

21  multiple superseding indictments, you know, and so they

22  couldn't do that at this time, we're going to have to

23  go ahead and go straight forward with this trial.

24        And essentially, essentially what this is is

25  a -- we are saying that they've only alleged two

assets, or a group of assets or whatever, because it's

very clear, and I don't think there's any dispute in

the bankruptcy law about this, that your interest in a

corporation is something that you have to tell the --

put in the petition and disclose, and that the assets

of that corporation do not belong to the personal

debtors, only their interest in the estate.

And one reason we move to object to the

evidence, Your Honor, is because it's a little more

complicated than when you have a case where you have a

wholly owned corporation. This is not a wholly owned

corporation, the evidence will show -- and the

government is not going to dispute this because I know

as much about this from them as anything -- and that is

that Mr. Tenorio is a 50 percent owner of the

corporation, Mrs. Tenorio is a 12 and a half percent

owner of the corporation, so the two debtors don't own

the entire corporation.

And so, when this was pled as count two of the

indictment, that count did not state an offense upon

which relief could be granted because they did not

allege that -- well, because it's simply not. They

alleged this contract and this contract is between one

corporation and another corporation, and they never

alleged that the Tenorios have failed or have concealed

1  their interest in the shares of stock in the

2  corporation.

3          THE COURT:  Okay.

4          MR. TRAPP:  And another reason we have done

5  this is we want to go on with the jury trial, this

6  case.  The government can't come in and just file a

7  dismissal and then file a new indictment at this time

8  because jeopardy is attached, that's why we waited

9  until this time.

10         THE COURT:  Okay.  And so looking at the

11  superseding indictment filed September 26, 2007, you're

12  looking at Page 3 under bankruptcy fraud, lines 18

13  through 24, is that what you're focusing in on,

14  Mr. Trapp, for the striking?

15         MR. TRAPP:  The superseding indictment -- oh,

16  lines -- I see, yes.

17         Well, it says "to wit", and then, the one

18  that's named in number one, accounts receivable, yes,

19  of course there's introductory language that ties into

20  that also, Your Honor.

21         THE COURT:  So you're saying then if the court

22  were to grant this based on your argument, that there

23  would only be two --

24         MR. TRAPP:  Alleged concealed assets, yes.

25         THE COURT:  Number two and number three.

1    MR. TRAPP:  Yes, Your Honor.

2    THE COURT:  All right.  Ms. David?

3    MS. DAVID:  Your Honor, this is actually an

4  issue in dispute, obviously, it's one of the contested

5  assets that the government is alleging they concealed.

6  This is a matter, frankly, for the fact finder, it's

7  the government's position.

8    Evidence will show, through testimony of

9  Curtis Ching, that these funds, approximately $75,000,

10  had been converted and later deposited into personal

11  accounts of the defendants making -- making them

12  property of the bank bankruptcy estate.  And it's the

13  government's position it's an issue of fact before the

14  jury, that the court could reserve ruling after hearing

15  the evidence.

16    And that would be the government's position on

17  this issue, Your Honor.

18    THE COURT:  Okay.  Thank you, Ms. David.

19    Mr. Trapp?

20    MR. TRAPP:  Yes, there's no allegation -- and

21  we're addressing what this case is about, there's no

22  allegation of that, Your Honor.

23    THE COURT:  I'm sorry, there's no allegation

24  what?

25    MR. TRAPP:  There's no allegation of any

1   conversion or anything of the sort.  They are alleging

2   that the proceeds -- that the accounts receivable --

3          Now the accounts receivable are not money.

4   Accounts receivable are a book entry of open account on

5   a contract.  And that's what they have alleged that we

6   have concealed.  And that's what we're supposed to be

7   going to trial on.

8          THE COURT:  What about the issue of notice of

9   conversion, do you think that -- what do you think

10  about that argument?

11         MS. DAVID:  Your Honor, the evidence in this

12  case will show that these -- this sum of money had been

13  diverted from two personal -- had been diverted and

14  deposited into the defendants' personal account, making

15  it property of the estate, and the government witness

16  will so testify to that effect.  And it's an issue for

17  the finder of fact.

18         THE COURT:  All right.

19         MR. TRAPP:  Of course, if somebody

20  fraudulently steals money from the corporation, Your

21  Honor, it doesn't become a part of the estate, it's

22  still the corporation's money or assets, and if

23  somebody is off running around with them, it's neither

24  here nor there.

25         THE COURT:  All right.  The court will --

1          MR. TRAPP: I don't think the government has

2  thought this through very much, Your Honor.

3          THE COURT: Well, I'm not prepared to make a

4  decision either way right at this moment. And I think

5  that -- well, I do have the case that Mr. Trapp cited,

6  I just had my law clerk pull it up, the *Fowler* case.

7          Does the *Fowler* case mean anything to you,

8  Ms. David, the case that's cited? Or have you had a

9  chance to review it?

10         MS. DAVID: I haven't, Your Honor.

11         THE COURT: And I haven't, I just have the

12  highlighted portions; but I want to review that. What

13  I'll do is, why don't we review that, I'll review that

14  tonight, and then we'll come back and argue it

15  tomorrow. Why don't you look at the case and see if

16  you agree or disagree, or if you still have the same

17  position. And then the court will make its ruling

18  tomorrow morning. Okay?

19         MS. DAVID: Contingent on the court's ruling,

20  Your Honor, I may need to, should that event occur,

21  modify opening statements. And could we have a recess

22  so that, if it becomes necessary, to do so?

23         THE COURT: Why don't you just prepare an

24  opening statement with one version, the version that

25  you want to go forward with, and if I deny the motion

1   just do that one, and then just cut out the other

2   portion.

3           MS. DAVID: Yes, Your Honor.

4           THE COURT: That might make it easier.

5           Mr. Trapp, I guess I'm just really not sure

6   about your argument. Can you come up to the podium and

7   explain this to me a little bit more clear before I

8   embark on looking at the laws here?

9           MR. TRAPP: I'm not in the best position to

10   argue this, I have all this stuff down here, but my

11   notes for arguing it are back at my office frankly.

12           THE COURT: Can you pull up the mike there?

13           MR. TRAPP: Yes. But, basically -- excuse me.

14           (Pause.)

15           THE COURT: You know, specifically focusing on

16   it's *Fowler* case that you cited.

17           MR. TRAPP: Well, the *Fowler* case simply is a

18   nice case that just really sets out what the bankruptcy

19   law is on this, as far as what's a part of the estate

20   of the debtors and what isn't. But I think first we

21   have to focus on the statute that we're alleged to have

22   violated.

23           It says, a person who knowingly and

24   fraudulently conceals from a custodian, *et cetera, et*

25   *cetera, et cetera*, in connection with a case under

1    Title 11 from creditors, et cetera, any property

2    belonging -- property belonging to the estate of a

3    debtor.

4            THE COURT:  Right.

5            MR. TRAPP:  Shall be fined, *et cetera*.

6            And what they have alleged is they have

7    alleged that, that the accounts receivable -- that's

8    that the accounts receivable of approximately X number

9    of dollars -- of course that's a book entry, account

10   receivable -- the accounts receivable of approximately

11   $74,000 from a contract by and between Juan C. Tenorio

12   and Associates, Inc., a corporation, and another

13   corporate entity, doesn't really matter if that's a

14   corporation entity or not, were not property of the

15   defendants.  In other words, the assets were not their

16   property.  Their interest in the corporation was.

17           So what they should have listed, according to

18   the government's position, is they should have listed

19   Juan C. Tenorio and Associates, Inc. where it says, do

20   you own any interest in any corporation.  And I suppose

21   they would then have to maybe say what their interest

22   was percentage-wise and they would also have to say I

23   think what the value -- they would have to value it,

24   the corporation shares, their interest in the

25   corporation is so much.  And they haven't charged us

1   with that.  They can't charge us -- they can't blithely

2   by charge the defendants with concealing a asset of a

3   corporation, because neither of my clients owned those

4   assets.  They never owned those assets.

5         Now, they said they're going to prove various

6   things.  They haven't alleged in any way, shape, or

7   form in the complaint that there was this corporation,

8   and that they -- and that the defendants somehow

9   converted an asset of the corporation or something, and

10   then -- it's just not alleged at all, that's not what

11   we're trying.  We're trying the fact that they have

12   concealed this account receivable.  Account receivable

13   isn't money.  If it's money, they'd put it in the bank.

14   Account receivable goes on their books.

15         THE COURT:  But it has the value of money.

16         MR. TRAPP:  Of course it has a value.

17         THE COURT:  It's just they don't have the

18   money, they haven't been able to collect it.

19         MR. TRAPP:  (Overlapping.)  They're saying

20   they got this money here and this money there.  I'm

21   saying, you know,  what they concealed, if they

22   concealed anything, was their ownership of the

23   corporation.  And they never alleged that.  Because

24   it's only the corporation, as a fictitious person which

25   they own percentages in, that is property of the

1  debtors. If the corporation owns a fancy, expensive

2  Cadillac, it's not theirs, it's the corporation's.

3  They haven't alleged it.

4       Now the Ninth Circuit I know, and I don't have

5  all my notes here, but the Ninth Circuit is pretty

6  careful about when you plead a case, you have to plead

7  it pretty carefully, and they just simply haven't. On

8  its face, the account receivable of a contract between

9  Juan C. Tenorio Associates, Inc. and somebody else is

10  not -- it cannot be their personal property, the

11  property of the debtors. That's it.

12       Now you might say -- what made me think about

13  this, I might not have thought about it, you know, not

14  that I would be right by not thinking about it, but if

15  you look at the first indictment, it has four counts.

16  Now those four counts, the counts 2, 3, and 4 had to do

17  with the personal, the individual, I should say the

18  individual bankruptcy. And I talked to Jeff Strand and

19  we both kind of agreed that there was a multiplicity

20  problem, it should be alleged in just one count; in

21  other words, three different assets in one count as a

22  violation of that statute.

23       If you look at the first count, which is

24  barred by the statute of limitation -- I made that

25  motion, it just mooted out because the government

1    dropped it -- they alleged this same asset as being the

2    property of the corporation in the corporation's

3    bankruptcy.  And how can they have it both ways.

4         Now, when they allege it in count one, the

5    amount of money is about $200,000, because after that,

6    the account receivable went down to I guess 74,000 when

7    they filed the petition for the individual bankruptcy.

8         THE COURT:  All right.  This is on count one

9    of the original indictment.  I have it.

10        MR. TRAPP:  Yes.  And it's the same asset.

11   And so when I first read that indictment, I said, wait

12   a minute, they can't -- that same asset can't be the

13   asset of the corporation, at the same time the asset of

14   these individuals.  That's what kind of put me on to

15   this.  And so, I don't really know bankruptcy law to

16   speak of, and so I started looking into it.  And my

17   suspicion was confirmed that when they alleged it the

18   first time around, that that made sense because they

19   said this is the corporation, the corporation did not

20   list that asset in its petition, okay, because the

21   asset didn't belong to the corporation.

22        And of course the other way around, it doesn't

23   work.  And then I found *Fowler* and a few other cases

24   and that say that -- just what I'm saying.

25        THE COURT:  Okay.  Now what is the difference,

1    though, between the original indictment -- I mean

2    which, show me which sections are different from the

3    section -- I'm looking at the original.

4                MR. TRAPP:  There's four counts.

5                THE COURT:  I'm there.

6                MR. TRAPP:  Okay, I'll skip over to counts 2,

7    3 and 4.  Counts 2, 3 and 4 are individual charges of

8    concealment in the single personal bankruptcy of first,

9    the corporation; second, I think the insurance

10   policies; and third, the Rota property.

11               And I think Jeff did the same research.  When

12   we talked, we seemed to be on the same wavelength, we

13   agreed that this was a problem of multiplicity.  In

14   other words, the same crime was being charged a little

15   different way, but it was the identical factual crime

16   in 2, 3, and 4, so that should be consolidated.  I

17   didn't make a motion on it because we just agreed.

18               The first count, however, is a petition that

19   -- Juan Tenorio alone is being charged with concealing,

20   because you don't have to be a debtor to be a

21   concealer.  You used to be, but some place along the

22   line, I don't know when, they amended the statute.  So,

23   for example, if some bank on Guam goes into bankruptcy

24   and I have something, I'm helping them do something and

25   I personally, I have no interest in the bank sort of

1    concealment, I can be charged with concealment in that

2    corporate bankruptcy. That's the way he was charged,

3    and that's what that is about.

4         And they say that the corporation concealed

5    the asset. But they also say that it was an asset of

6    the corporation, they say it right in count one.

7         In count 2 -- forget 3 and 4 because they

8    don't involve the receivables. In count 2 --

9         THE COURT: Okay, let me just look at this.

10   So we're looking at count one, belonging to the estate

11   of the debtors, Juan C. Tenorio and Associates, to wit,

12   then accounts receivable of approximately 199,817.

13        All right. That's what you're focusing in on

14   there?

15        MR. TRAPP: I'm contrasting count one and

16   count two, Your Honor.

17        THE COURT: Okay. Then let me go to count two

18   of the original indictment.

19        Okay. And now it's $74,817 belonging to the

20   estate of, that's accounts receivable, belonging to the

21   estate of the debtors Juan Tenorio and Frances Tenorio.

22        MR. TRAPP: Exactly. It doesn't, it never

23   did.

24        THE COURT: Now what was it you said? Is

25   there a difference though, between the 74,000 and the

1  199,000?

2          MR. TRAPP:  Except for the obvious

3  mathematical difference, Your Honor, is that the

4  corporate bankruptcy preceded in time the personal

5  bankruptcy, and it would appear that a lot of that

6  receivable was reduced by the time they got around to

7  filing the personal bankruptcy.  It was the same book

8  entry, you might say, but there had been payments made

9  on it, that's all.

10         THE COURT:  So you're looking at two different

11 bankruptcies.

12         MR. TRAPP:  But it's the same account

13 receivable, yeah, but it's two different separate

14 bankruptcies, it's basic to this whole concept.  And

15 we're here only on the personal bankruptcy because the

16 statute of limitations has run on any concealment in

17 the corporate bankruptcy.

18         THE COURT:  All right.  So, I think I

19 understand that.  I'm going to look at it.

20         But, Ms. David, do you want to look at the

21 case law on this?

22         MS. DAVID:  Yes, Your Honor.  You know, it's

23 somewhat -- Mr. Trapp just submitted this motion just

24 less than 30 minutes ago.

25         THE COURT:  Right.

1          MS. DAVID:  I have opening statement and

2  order of proof as to my witnesses planned as to the

3  superseding indictment.  The government's position is,

4  it's an issue of fact before the jury.  We are calling

5  as a witness Curtis Ching, the trustee who was involved

6  in this case.  It's alleged in the introductory

7  paragraph of the superseding indictment that --

8          THE COURT:  Okay.  Just refer to me the page

9  and the line please.  That will be helpful.

10          MS. DAVID:  I'm referring to Page 2, beginning

11  on line 14 continuing on to 17.

12          THE COURT:  Right.

13          MS. DAVID:  Where it states "the debtor was

14  required to disclose the existence of assets even if

15  their status in bankruptcy was uncertain".  And it goes

16  forth to say it was the Bankruptcy Court that made the

17  final determination, and that the debtor can help

18  preempt the court's determination by failing to report

19  or concealing an asset.

20          This is the government's theory.  I would like

21  to propose sufficient time to research this issue, if

22  the court is not inclined to -- and to brief the issue

23  if possible, before opening statement.

24          THE COURT:  Sure, I'll give you time.  I mean,

25  I think it's only fair.

1          MR. TRAPP:  Your Honor, may I confer?

2          THE COURT:  Right.  Go ahead.

3          (Pause while counsel conferred.)

4          MS. DAVID:  I would like some time to brief

5     the issue, if the court wants briefing on the issue.

6          THE COURT:  Well, I just want to make sure

7     that -- I'm not really sure what the answer is, I'm not

8     sure if I would allow it or disallow the motion.  I

9     need to look at the case law too.

10         MS. DAVID:  We would, the government will

11    simply say that we do have as witnesses for this trial

12    Curtis Ching, he works for the U. S. Trustee's Office,

13    the trustee Robert Steffy who handled this personal

14    bankruptcy case.

15         THE COURT:  You're saying this is a question

16    of fact for the jury?

17         MS. DAVID:  Yes, Your Honor.

18         THE COURT:  And we should leave it to the

19    jury's determination.

20         MS. DAVID:  Yes, Your Honor.  But if the court

21    wants additional briefing, in all honesty, I don't know

22    that I would have sufficient time to provide a response

23    like tomorrow morning before the 9:00 o'clock time when

24    the jurors will be called in.

25         MR. TRAPP:  I suggested to counsel, and they

Case 1:07-cr-00078    Document 82    Filed 12/10/2007    Page 34 of 37

1    didn't respond, but I mean, we have one business day

2    tomorrow where we're going to have to do something

3    about this, and then there's Monday.  Why don't we have

4    the jury come back on Monday?

5              MS. DAVID:  I mean, I do want to press forward

6    and try to persuade the court that this is a matter for

7    the fact finder.

8              THE COURT:  Well, I'm not disagreeing that it

9    may be a matter for the fact finder.  I just want to

10   check the case law.  When I get a case, I want to

11   review it and review his argument in comparing the

12   original indictment and the superseding indictment.  I

13   need time too, I just can't make a decision in 20

14   minutes unless it's something I've done before.

15             Do you need time -- do you think you could

16   prepare something tomorrow by looking at the case law?

17   If all you're going to say is the same thing tomorrow,

18   then at least I know your argument and then I could

19   hopefully make a decision tomorrow morning.  I think I

20   could, I just need tonight to review it.

21             MS. DAVID:  Pretty much it's going to be the

22   same argument, Your Honor.

23             THE COURT:  Is it?  Okay.

24             MS. DAVID:  And I will review the *Fowler* case.

25             THE COURT:  Well, if you want to file anything

1  tomorrow morning, file it by 8:30 in the morning.

2  How's that?

3      MS. DAVID:  Okay.

4      THE COURT:  And I'll review the *Fowler* case

5  and consider the arguments made by Mr. Trapp.  And then

6  we will hear this tomorrow morning at 9:00.  I may have

7  questions.  I'll make my decision tomorrow morning.

8  And then I'll ask the jurors to come, rather than come

9  in at 9:00 o'clock, I'll ask them to come in at 9:45

10  and we'll start opening statement at 10:00 a.m.

11      Okay with you, Ms. David?

12      MS. DAVID:  Yes, Your Honor.  Thank you.

13      THE COURT:  Mr. Trapp?

14      MR. TRAPP:  Fine, Your Honor.

15      THE COURT:  All right, let's call in the

16  jurors and let me tell them that we'll ask them to be

17  in by 9:45 and we'll start at 10:00.

18      MR. TRAPP:  I understand we'll have further

19  argument tomorrow; is that right, Your Honor?

20      THE COURT:  Yes.

21      MR. TRAPP:  Okay, I'll be much better

22  prepared.

23      THE COURT:  We'll argue at 9:00.

24      (Whereupon the jurors were excused and

25      court recessed.)

* * *

CERTIFICATE OF REPORTER

CITY OF AGANA        )
                     ) ss.
TERRITORY OF GUAM    )


        I, Wanda M. Miles, Official Court Reporter

of the District Court of Guam, do hereby certify the

foregoing pages 1-25, inclusive, to be a true and

correct transcript of the shorthand notes taken by me

of the within-entitled (excerpt of) proceedings, at the

date and time therein set forth.

        Dated this 8th day of December, 2007.




_____


Wanda M. Miles, Official Court Reporter
District Court of Guam